# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF VIRGINIA

|  |  |  |
|---|---|---|
| DOUGLAS AREVALO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 13-cv-1219 |
| | ) | |
| GRANITE BAY ACCEPTANCE, | ) | |
| INC, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANT GRANITE BAY ACCEPTANCE INC.'S BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR AN AWARD OF ATTORNEY'S FEES AND COSTS

The Defendant, Granite Bay Acceptance, Inc. ("Granite Bay"), by counsel, submits its Brief in Opposition to Plaintiff's Motion for an Award of Attorney's Fees and Costs.

## INTRODUCTION

At the outset, Plaintiff's mischaracterization of the Court's position as well as the Court's direction to Plaintiff must be addressed. Contrary to Plaintiff's statement, the Court did not indicate "that it would take under advisement the amount of attorneys' fees to be awarded to the Plaintiff." (Dkt. 75, p. 2.) Rather, the Court said it would take under advisement <u>the issue of whether to award fees at all</u>, and, if the Court determines fees are appropriate, then it will decide how much to award. (*See*, June 6, 2014 Hearing Transcript ("Hearing Trans."), at 21:10-19, attached hereto as **Ex. 1**.) Further, the Court's direction to Plaintiff was certainly not an invitation to unjustifiably expend unreasonable amounts of time by many lawyers pursuing fees, the cost of which Plaintiff now seeks to pile onto Defendant. (*Id.*)

The facts and procedural posture of this matter makes this a case where this Court should decline to impose any sanctions and deny Plaintiff's request for an award of fees and costs. Declining to award fees is consistent with Rule 55(c), under which the purpose of imposing

1

conditions is "to avoid undue prejudice to the non-defaulting party." 10-55 Moore's Federal Practice - Civil § 55.70. Here, the Court has already found, based on the evidence and argument at the last hearing, that Plaintiff did not suffer any prejudice, much less any "undue prejudice." Further, many cases from outside the Fourth Circuit have held that punitive sanctions, like awarding Plaintiff his attorneys fees and costs, are inappropriate absent evidence of bad faith or willful misconduct, or where the defendant sets forth a meritorious defense. This Court has already ruled that there was no bad faith or willful misconduct by the Defendant because it held that the "delay [was] caused by some negligence." (Hearing Trans., at 20:21.) Also, the Court has already determined that Defendant has "at the very least, … a good argument on a meritorious defense." (*Id.* 20:18-20.) For these reasons alone, no sanction is warranted in this case therefore Plaintiff's Motion for an Award of Attorney's Fees and Costs should be denied.

Moreover, promptly after being engaged to represent Defendant, Defendant's counsel reached out to Plaintiff's counsel in an effort to avoid the unnecessary motions battle for which Plaintiff now seeks to be paid. Defendant's counsel explained what had occurred to Plaintiff's counsel and requested that Plaintiff withdraw its Motion for Default and consent to the filing of a late Answer so that the parties could try to resolve the matter, or litigate on the merits, and not waste further resources. Plaintiff refused. Therefore, Defendant was forced to file its Motion to Set Aside the Default, its Motion for Leave to File a Late Answer and its Opposition to the Motion for Default Judgment to protect its legal interests and ensure that this matter would be heard on the merits. Consistent with the rationale in *Pinpoint IT Services, LLC v. Atlas IT Export Corp.* 2012 U.S. Dist. LEXIS 140687, *13 (E.D. VA 2012), Plaintiff should not be awarded its attorney's fees for responding to motions filed by Defendant to vacate the default and obtain

2

permission to file a late Answer because Plaintiff's own actions lead to the generation of fees incurred to do so.

If, however, this Court is inclined to award Plaintiff fees, the award should be a mere fraction of what Plaintiff has requested (Defendant submits 10%, or $3,636.43). In this case Plaintiff seeks payment for a virtual "feeding frenzy" of fees involving an astonishing amount of more than 108 hours billed by *five* lawyers from different law firms whose hourly rates range from $275 to $575. (Dkt. 75, p. 20). The Court has a duty to determine attorney's fees awards that fairly and completely compensates prevailing attorneys, but its duty includes preventing windfalls to those attorneys. *See, Daly v. Hill*, 790 F. 2d 1071, 1082 n. 15(4th Cir. 1986); *City of Riverside v. Rivera*, 477 U.S. 561, 580 (1986). Further, Defendant submits the evidence of the hours and rate claimed by each attorney are inadequately documented, lack supporting evidence, and show both a failure to exercise billing judgment and also the expenditure of unwarranted and duplicative hours. *See*, *Hensley v. Eckerhart,* 461 U.S. 424, 433-437 (1983) (holding "the party seeking an award of fees should submit evidence supporting the hours worked and rate claim. Where the documentation of hours is inadequate, the district court may reduce the award accordingly" and the applicant is required to exercise billing judgment and to be mindful of hours that appear excessive, redundant and unnecessary).

## STATEMENT OF FACTS

1.  On October 2, 2013 the Plaintiff filed its complaint in the above captioned matter pursuant to the Fair Credit Reporting Act ("FCRA"), 15 USC § 1681, *et seq.*

2.  Granite Bay was served on November 21, 2013. (Dkt. 13).

3.  On January 29, 2014 a clerk's entry of default was entered in this matter. (Dkt. 38).

Active 22547162v1

4.     Not until May 6, 2014, over 4 months later, did Plaintiff file his Motion for Entry of Default Judgment.  (Dkt. 46).

5.     On May 13, 2014, just after being engaged to represent Granite Bay, the undersigned contacted counsel for the Plaintiff to determine whether the Plaintiff would agree to set the default aside, so that both counsel for Defendant and Plaintiff could avoid wasting unnecessary time and resources litigating this issue before this Court.   Plaintiff's counsel would not agree and Defendant was forced to bring Motions before this Court to rectify the default. Counsel made this request on numerous cases before Plaintiff's counsel filed anything further in this case. These conversations in an attempt to resolve these issues continued until the hearing on June 6, 2014.

6.     On May 19, 2014 Granite Bay filed its Motion to Set Aside Default and for Leave to File Late Answer.  *(Dkt. 56, 58.)*  On May 28, 2014 Granite Bay filed its Response to Plaintiff's Motion for Default.  (Dkt. 63).

7.     On June 6, 2014, the parties appeared before this Court for hearing on Plaintiff's Motion for Default, Defendant's Motion to Set Aside the Default, and Defendant's Motion to file a Late Answer.  As stated by this Court in that hearing, "the motions [were] mirror images of each other, and the argument's for one, are the arguments against the other." (*See*, June 6, 2014 Hearing Transcript ("Hearing Trans."), at 3:2-4, attached hereto as **Ex. 1**.)

8.     The Court ruled in favor of Defendants, granted its Motion to Set Aside the Default and for Leave to File a Late Answer and denied Plaintiff's Motion to Entry of Default. (*See,* Dkt. 71, Order dated June 6, 2014.)  The Court held that "the situation in this case *clearly calls for setting aside the default*." (Hearing Trans., at 20:13-16; emphasis added.)  The Court also stated that it would take the issue of Plaintiff's fees under advisement, and after receipt of a

"fee declaration" and defendant's response to the same, "the Court will decide <u>whether</u> and how much in counsel fees to award under the circumstances." (*See*, Hearing Trans., at 21:10-19, *emphasis added*.)

9.      During the hearing, the Court ruled that "[t]here is no real prejudice to the plaintiff within the legal meaning of that term if the default is set aside, plaintiff's position has not been compromised by events which happened in the meantime. The history of dilatory action appears to me to be mutual on balance." (*See*, Hearing Trans., at 21:5-9.)  Also, the Court held Defendant has "at the very least, … a good argument on a meritorious defense." (*Id*. 20:18-20.)

10.     Further, the Court contrasted Plaintiff's own negligence in delaying his motion for a default judgment against Defendant's prompt action upon realization of the problem.  (*See*, Hearing Trans., at 20:20-25)

11.     On June 30, 2014, Plaintiff filed his Motion for Attorney Fees and Costs, in which he seeks the aggregate amount of $36,364.28.  (Dkt. 74.)  Plaintiff claims this amount is comprised of fees incurred (1) pursuing the Clerk's entry of default (Docket No. 36); (2) preparing and filing his Motion and Memorandum in Support of Default Judgment (Dkt. 46 & 47); (3) responding to Defendant's Motion to Set Aside Default (Dkt. 64); (4) responding to Defendant's Motion for Leave to File a Late Answer (Dkt. 65); and (5) pursuing his Motion for Attorney Fees and Costs (Dkt. 74 & 75).

12.     Defendant, Granite Bay now opposes Plaintiff's request for attorney's fees and costs.

## ARGUMENT

### I.      <u>Plaintiff's Fee Request Should Be Denied.</u>

This Court has already decided to grant Defendant relief from the default without conditioning it on any sanctions.   The facts and procedural posture of this matter makes this a

5

case where this Court should decline to impose any sanctions and deny Plaintiff's request for an award of fees and costs.  The matter of *Momah v. Albert Einstein Med. Ctr.*, 161 F.R.D. 304, 308-309 (E.D. Pa. 1995) is instructive as there the court declined to award attorney's fees as a sanction to plaintiff's counsel when relief from default was "clearly warranted," the default was not the result of bad faith, and where plaintiff could have decided not to oppose the motion where the error was not the result of bad faith.  *Id.*  The *Momah* court stated that if plaintiff "was concerned about the time and expense involved in opposing Defendants' motion, he could have, and given the strength of his argument, should have, declined to oppose the motion." *Id.* at **10.

On par with the court in *Momah*, this Court stated during the June 6th hearing that "the five factors set out in established Fourth Circuit precedent, the situation in this case *clearly calls* for setting aside the default." (Hearing Trans., at 20:13-16; emphasis added).)  While Defendant acknowledges the Court's inherent power to impose reasonable conditions in determining whether to exercise its discretion to set aside an entry of default, this Court has already decided it is appropriate to grant Defendant relief from default without the necessity of the imposition of any conditions.  This Court can, and Defendant submits it should, exercise its discretion by declining to impose any conditions or sanctions (including awarding counsel fees to Plaintiff).

Declining to award fees is consistent with the standard under Rule 55(c), under which the purpose of imposing conditions is "to avoid undue prejudice to the non-defaulting party."  10-55 Moore's Federal Practice - Civil § 55.70.  Further, "punitive sanctions are inappropriate absent evidence of bad faith or willful misconduct, or where the defendant sets forth a meritorious defense." *Royal Ins. Co. Of Am. v. Packaging Coordinators, Inc.*, No. 00-3231, 2000 U.S. Dist. LEXIS 15471, 2000 WL 1586081, at *3 (E.D. Pa. Oct. 24, 2000); *accord Blue Ribbon Commodity Traders v. Quality Foods Distribs.*, 2007 U.S. Dist. LEXIS 90813 (E.D. Pa. Dec. 11,

2007); *see also Blue Ribbon Commodity Traders, Inc. v. Progresso Cash & Carry*, 2008 U.S. Dist. LEXIS 57353, *10 (E.D. Pa. July 23, 2008) (holding that "defendant has not shown bad faith or willful misconduct, and has a meritorious defense. Thus, sanctions are inappropriate."); *GE Medical Sys. Info. Techs. v. Ansar, Inc*., 2004 U.S. Dist. LEXIS 26551, *19 (E.D. Pa. Dec. 23, 2004) )(because "service was not valid and there is no evidence to support a finding that Defendants acted in bad faith or were guilty of willful misconduct, alternative sanctions would be inappropriate."); *Bell v. Brigantine Mun. Court*, 2008 U.S. Dist. LEXIS 6657, *10-11 (D.N.J. Jan. 29, 2008) ("Defendant Broome has presented a meritorious defense, and there is no evidence to suggest that he acted in bad faith or with willful misconduct. Therefore, no sanctions will be imposed.")

Here, the Court has already found, based on the evidence and argument presented at the prior hearing, that "[t]here is no real prejudice to the plaintiff within the legal meaning of that term if the default is set aside" and also that "plaintiff's position has not been compromised by events which happened in the meantime." (*See*, Hearing Trans., at 21:5-6.) As the Court already has ruled that Plaintiff failed to prove setting aside the default prejudice Plaintiff in any manner, there can be no doubt that Plaintiff failed to establish the higher standard of "undue prejudice" necessary to justify the imposition of sanctions in the form of attorney's fees (or otherwise). *See id.*; *Combustion Sys. Sales v. Eastern Metal Prods. & Fabricators, Inc*., 112 F.R.D. 685, 691 (MD.N.C. 1986) (holding the non-defaulting party bears the burden of showing prejudice); *Lotachy v. Arthur Murray, Inc*., 816 F.2d 951, 953 (4th Cir. 1987) (listing factors that courts examine to determine whether Plaintiff is prejudiced).

"Whether there is justification for such a condition depends on the circumstances of the case, and it is incumbent on the district court to make findings sufficient to permit appellate

Active 22547162v1

review of the condition's reasonableness." *See*, *e.g.*, *Powerserve Int'l, Inc. v. Lavi,* 239 F.3d 508, 515-516 (2d Cir. 2001). Here, the Court has already held that "the situation in this case *clearly calls for setting aside the default*." (Hearing Trans., at 20:13-16; emphasis added.)  Just like in *Momah,* where relief from default was "clearly warranted" and plaintiff "could have, and given the strength of his argument, should have, declined to oppose the motion," here too "an award of compensatory sanctions would be inappropriate" because Plaintiff could have decided not to oppose relief from default and this Court has already ruled Defendant did not act in bad faith or willfully since the "delay [was] caused by some negligence." 161 F.R.D. at 308-309; Hearing Trans., at 20:21.

## II. Assuming *Arguendo* This Court Decides To Award Fees To Plaintiff, Only A Small Fraction Of What Is Requested Should Be Granted.

Plaintiff's request for fees is neither warranted nor reasonable based upon the factors established by the Fourth Circuit.  In analyzing the reasonableness of an applicant's fee request, the Fourth Circuit has instructed district courts to guide its discretion by following these factors:

> (1) the time and labor expended;(2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; 8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case with the legal community in which the suit arose; (11) the nature and length of the professional relationship between the attorney and client; and (12) attorney's fees awards in similar cases.

*Robinson, 560 F.3d at 243; Barber v. Kimbrell's, Inc.,* 577 F.2d 216, 226 (4th Cir. 1978).

Plaintiff's request for fees for entries associated with work that had to be completed regardless of whether Defendant had ever appeared should not be awarded by this Court.  *See*, *Pinpoint IT Services,* 2013 U.S. Dist. LEXIS 105072*, *10.  Those entries include work done on

issues where "the development of which would be necessary whether the case proceeded on the merits or in a default judgment posture." *Id., at, *13.

Courts in the Fourth Circuit have denied in whole, or at least in part, fee petitions where entries are redundant, excessive or otherwise unnecessary, *see, Hensley*, 461 U.S. at 434, and where the applicant failed to "effectively document the time between tasks for which there is a valid legal basis to recover fees, and tasks for which no legal basis is asserted", *see, Liberty Tax Service v. Trisha Grabert*, Case No. 2: 2013cv00047 (E.D. Va. Dec. 30, 2013). In *Liberty Tax*, this Court stated that "[p]roper documentation of compensable hours is essential to the proper calculation of a fee award and '[i]nadequate documentation is a basis for reducing or denying a fee award.'" *Id.* quoting *E.E.O.C. v. Nutri/Sys., Inc.* 685 F.Supp.568, 573 (E.D. Va. 1988).

If a party is declared by this Court to be entitled to an attorney's fee award, the court must first determine a lodestar figure by multiplying the number of reasonable hours expended by a reasonable rate. *Robinson v. Equifax Info. Servs*., LLC, 560 F.3d 235, 243 (4th Cir. 2009). "In addition to the attorney's own affidavits, the fee applicant must produce satisfactory specific evidence of the prevailing market rates in the relevant community for the type of work for which he seeks an award." *Grissom v. The Mills Corp*., 549 F.3d 313, 321 (4th Cir. 2008). The prevailing market rate may be established through affidavits reciting the precise fees that counsel with similar qualifications have received in comparable cases; information concerning recent fee awards by courts in comparable cases; and specific evidence of counsel's actual billing practice or other evidence of actual rates which counsel can command in the market. *See*, *Spell v. McDaniel*, 824 F.2d 1380, 1402 (4th Cir. 1987). This Court's discretion to award fees to Plaintiff "encompasses the ability to depart from the lodestar in appropriate circumstances." *Carroll v. Wolpoff & Abramson*, 53 F.3d 626, 629 (4th Cir. 1995).

## A.    Time and Labor Required

According to Plaintiff, most of the time sought in his fee petition is for time drafting the Motion for Default Judgment, including the Proposed Finding of Fact and Conclusions of Law as Exhibit 2.  Petition, p. 7.   Plaintiff is not entitled to fees for the drafting of the Motion for Default Judgment or the Proposed Finding of Fact and Conclusions of Law, both of which contained speculation, as well as allegations and exhibits regarding litigation entirely unrelated to the instant matter and totally unnecessary to Plaintiff's motion.  Further, even if this were a legitimate way to prove up a case (which it is not), this information would be necessary for Plaintiff's pursuit of his claim and would have been required regardless of Defendant's default or appearance in this matter.   As the court stated in *Pinpoint IT Services, LLC,* Plaintiff should not be awarded attorney's fees for arguments advanced that would be deemed necessary whether or not the case proceeded on the merits or if a default was entered.  *Pinpoint IT Services, LLC*, 2012 U.S. Dist. LEXIS 140687 at *13.

 Further, at the hearing and in regard to the motions subject to this fee petition, the Court specifically pointed out that the motions were "mirror images of each other, and the argument's for one, are the arguments against the other." (*See*, Hearing Trans., at 3:2-4.)   This Court also stated that there is no prejudice to the Plaintiff as his position has not been compromised by the events which happened in the time between service of the Complaint and Defendant's appearance. (*See*, Hearing Trans., at 21:5-9.)  Those facts alone justify a denial of Plaintiff's fee request.

In the event this Court disagrees with Defendant's positions that the request for fees should be denied in its entirety, this Court must at the very least adjust the lodestar figure downward based upon the excessive, unnecessary, redundant, vague and poorly documented

billing entries produced by Plaintiff. For example, Mr. Gruzzo's entries include the following: 1/22/14 for "correspondence" for "review of file to determine status of Granite Bay; email correspondence with Mr. Bennett re: Granite Bay; file discovery plan", 4/18/14 for "conference" (about a redacted matter) followed by "and discuss availability and steps regarding motion for default," and entry dated 5/6/14 for "finalize" and proofread motion, memo, proposed finding of fact and conclusion of law; file same." Dkt. 75-2, pp. 6, 8. Those entries are vague, contain no specific information or detail related to the default and involve administrative tasks counsel should not be billing for.

Plaintiff's counsel also bills for what courts have found to be "over-conferencing" and nondescript telephone calls with opposing counsel, co-counsel and Plaintiff, while failing to provide this Court with the detail and specificity necessary to award those requested fees. *See,* Dkt. 75-2, p. 8. For example, Mr. Guzzo bills on 5/14/14 for 1.6 hours for a "conference" "with Mr. Arevalo re: upcoming hearing; telephone conference with Judge Jones's chambers; legal research on grounds for vacating judgment; telephone call with Judge Jones." *Id.* Nothing contained in that entry provides sufficient specificity to warrant a fee award to Plaintiff. A review of all of Mr. Guzzo's entries evidence that they are all block-billed and do not allow the Court to determine the amount of time spent on each task. This prohibits the Court from being able to distinguish the tasks that are subject to the awarding of fees and those that are not, and therefore, those entries should be denied the awarding of those fees. *See,* Dkt. 75-2, pp. 8-12.

"Block billing" is generally defined as "grouping, or lumping, several tasks together under a single entry, without specifying the amount of time spent on each particular task." *Guidry v. Clare*, 442 F. Supp. 2d 282, 294 (E.D. Va. 2006). "The practice of 'block billing' has been generally disfavored in federal courts across the country and has often led to a reduction in

attorney's fees." *McAfee v. Boczar*, 2012 U.S. Dist. LEXIS 157796, *33-34 (citing *Welch v. Metropolitan Life Ins.*, 480 F.3d 942, 948 (9th Cir. 2007) ("It was reasonable for the district court to conclude that Welch failed to carry her burden, because block billing makes it more difficult to determine how much time was spent on particular activities."); *Role Models American v. Brownlee*, 353 F.3d 962, 971, 359 U.S. App. D.C. 237 (D.C. Cir. 2004) (expressing concern where "time records lump together multiple tasks, making it impossible to evaluate their reasonableness"); *Robinson v. City of Edmond*, 160 F.3d 1275, 1284 (10th Cir. 1998) (noting that block billing "does naturally and quite correctly raise suspicions about whether all the work claimed was actually accomplished or whether it was necessary. This concern is particularly important in a situation where a party is seeking to have his opponent pay for his own lawyer's work.").

Ms. Kelly's bill entries too are all in block- billed form, do not distinguish the time spent on individual tasks and contain vague descriptions not sufficient to meet Plaintiff's burden.  For example, Ms. Kelly bills 2.3 hours on 6/2/14 for editing oppositions, correspondence and telephone conference with opposing counsel and conference with co-counsel. *See*, Dkt. 75-2, p. 10.  This entry does not sufficient delineate the amount of time spent on each task to justify an award.  Ms. Kelly's next threes entries totaling 4.1 hours contain no specifics or information to indicate those entries  even relate to the default in this matter.  *Id.*

The billing entries for Ms. Nash, Mr. Bennett and Ms. Mikac too are vague, lack sufficient description and do not differentiate time spent completing each task. *See,* Dkt.  75-3, pp. 8-10.  For example, Ms. Nash submitted entries totaling 7.5 hours for preparing for motions hearing but fails to specify what the preparation entailed.  *Id.* at p. 8.  Mr. Bennett vaguely billed 5.75 hours for "Research re: Granite Bay; obtain California docket and documents; review

12

documents; review California case pleadings; westlaw; redraft Proposed Facts/Law." *Id*. at p. 9. That entry does not delineate the time spent on each individual task. The only entry that is related to the default in this matter involves the Proposed Facts/Law but there is no indication to the Court regarding the actual time spent on that particular task. As an example of the deficiencies in Ms. Mikac's entries, she bills for "discussing" status of motions and status of case with co-counsel. *Id.* at p. 10. These entries are not sufficient to recover those fees. Further, Ms. Nash and Ms. Mikac each improperly bill for "emails re: case" without providing any specifics or support that those fees are warranted and reasonable. *Id.* at pp. 8-10. Clearly, such a general and nonspecific entry such as "emails re: case" cannot be awarded.

Lastly, Plaintiff's declarations regarding the time incurred by its counsel at Consumer Litigations Associates, P.C. ("CLA"), contain no indication that the time requested was kept contemporaneously with the tasks completed. Those time entries are a review of work already performed or a mere recitation of hours billed multiplied by the hourly rate. CLA's failure to submit any contemporaneous and detailed billing records requires a finding that Plaintiffs did not meet their burden of proof. See *Sussman v. Patterson*, 108 F.3d 1206, 1212 (10th Cir. 1997) (stating that to satisfy the burden of proving reasonable fees, counsel seeking fees must keep contemporaneous and detailed records of time); *National Ass'n. of Concerned Veterans v. Secretary of Defense*, 675 F.2d 1319, 1327 (D.C. Cir. 1982). It is impossible, therefore, to have any review whatsoever of the time alleged to have been spent in prosecution of Plaintiff's claims. Plaintiff's supporting documentation is entirely inadequate and his failure to meet his burden requires no fee award at all or, at a minimum, a significant reduction.

 "The court must necessarily exclude any hours that are…not reasonably expended on the litigation." *Lilienthal v. City of Suffolk,* 322 F. Supp. 2d 667, 670 (4th Cir. 2004). The Fourth

Circuit is and has been "sensitive to the need to avoid use of multiple counsel for task where such use is not justified by the contributions of each attorney." *Rum Creek Coal Sales, Inc. v. Caperton,* 31 F.3d 169, 175 (4th Cir. 1994). Therefore, the time purportedly spent by Plaintiff's five lawyers –2 partners and 3 associates - who claim to have billed a ridiculous 108+ hours in connection with this matter is clearly unreasonable in light of the circumstances and true facts in this matter.

Any fee award in this case should be reduced to address the deficiency in the fee petition, which seeks fees for unnecessary work. The matter of attorneys' fees rests within the sound discretion of the trial judge who is in the best position to determine whether and to what extent such fees should be awarded. *Synthon IP, Inc. v. Pfizer, Inc.*, 484 F. Supp. 2d 437, 444 (E.D. Va. 2007). "[C]ourts frequently exercise their discretion to reduce an entire fee request or portions thereof by a stated percentage in order to address some deficiency in the application," including for unnecessary work. *Id.* at 444-45 (imposing 20% fee reduction for unnecessary work performed); *see also McConaughy v. United States*, 1994 U.S. App. LEXIS 21423 (4th Cir. August. 12, 1994) (holding that the trial court did not abuse its discretion by awarding plaintiff taxpayers only 35% of their attorneys' fees where plaintiffs filed unnecessary and unreasonable motions after the government conceded the case); *Rum Creek Coal Sales v. Caperton*, 31 F.3d 169, 178 (4th Cir. 1994) (affirming disallowance of fees and expenses incurred in connection with unnecessary work). Plaintiff should not be entitled to recover fees which were incurred unnecessarily. Accordingly, this factor also warrants a refusal to grant attorney's fees or in the alternative, a downward adjustment of those fees.

Active 22547162v1

## B. Novelty and Difficulty of Questions Raised

Contrary to Plaintiff's position, the drafting of the Proposed Findings of Fact and Conclusions of Law did not require extensive research into the Defendant's business practices. The information and case law contained in the brief and exhibit was required in order for Plaintiff's pursuit of his claim for the start, regardless of the default. Further, the Motion and Proposed Findings of Fact and Conclusions of Law contained speculative allegations about other matters and untrue statements regarding Defendant's business practices entirely unnecessary to the Motion. Plaintiff's argument that it was forced to conduct extensive research into Defendant's business practices because of the scarcity of information available and Defendant's lack of communication is unavailing, in particular because this Court stated during the June 6 hearing, "if you really needed their evidence in order to bolster your settlement position with other parties, you could have served a document subpoena on them." (*See*, Hearing Trans., at 15:2-5.)

Further, as this Court pointed out, the same arguments were advanced in Defendant's Motion for Leave to File Late Answer and Plaintiff's Motion for Entry of Default Judgment. Accordingly it would be improper for Plaintiff to be awarded double fees for mirror image work. This is especially true given that Plaintiff's counsel could have avoided incurring the vast majority of their fees simply by cooperating with Defendant's counsel in a voluntary vacation of the default.

Nonetheless, Plaintiff's counsel still requests fees for 6.4 for drafting the response to Defendant's Motion for Leave to File Late Answer (*see,* Dkt. 75-3, p. 8), 12.8 hours to prepare for the hearing on the motions *(see,* Dkt. 75-3, p. 8 and Dkt. 75-2, pp. 9-10), 18.1 hours for drafting the response to Defendant's Motion to Set Aside the Default (*see,* Dkt. 75-3, p. 10), and

12.25 hours for drafting the reply in support of its Motion for Default and Proposed Findings of Fact and Conclusions of Law (*see,* Dkt. 75-3, pp. 8-9). These hours do not include those for attending the hearing, conferencing with other attorneys or other administrative or miscellaneous tasks as requested by Plaintiff. The hours requested by Plaintiff are clearly excessive considering the arguments advanced in each of the briefs mentioned above were almost identical, involved the same questions of law, case law and fact pattern. It is Plaintiff's burden "to make out the reasonableness of [its] hourly rate with specific evidence." *Newport News Shipbuilding & Dry Dock Co. v. Holiday,* 591 F.3d 219, 230 N. 12 (4th Cir. 2009). Therefore, it is clear that this Court, in its discretion, should adjust the lodestar figure downward based upon the excessive, redundant and unnecessary fees requested by Plaintiff.

### C.        Skills Required to Perform Legal Services Properly

Plaintiff's speculation regarding his counsel being one of only a few qualified attorneys to handle a matter such as this is not convincing. Not only does Plaintiff's statements undermine the qualification of other attorneys in the state of Virginia, but it is untrue. In fact, a check of lawyers.findlaw.com/lawyer/firm/consumer-protection/Alexandrea/Virginia yields legions of attorneys who represent consumers in cases such as this one, including Plaintiff's attorneys themselves. (*See,* http://lawyers.findlaw.com/lawyer/firm/consumer-protection/Alexandrea /Virginia, last visited July 5, 2014.) This factor does not support Plaintiff's claims for fees.

### D.        Opportunity Costs in Pressing Litigation

Plaintiff's argument that the pursuit of this matter prohibited his counsel from pursuing other matters is disingenuous. After the filing of the Complaint and service on Defendant, Plaintiff took no action as to Defendant until May 6, 2014, over 4 months after the clerk's entry of default. Plaintiff never issued any subpoenas for deposition or documents to Defendant.

16

Plaintiff merely filed a motion containing information, allegations and case law that would have been required in pursuing his claim regarding of Defendant's default. Plaintiff's counsel's lack of diligence in this matter did not prevent their ability to accept other cases or opportunities.

Plaintiff's argument that his counsel lacks the resources of a large firm must fails as well as Plaintiff completely ignores the fact that he has not one, but two firms and five attorneys representing him on a simple FCRA mixed file claim. Plaintiff's arguments under this factor, like his billing entries, are not reasonable based upon the facts in this matter.

### E. Customary Fee for Like Work

Plaintiff cites to the affidavit of Mr. Pittman to support the qualifications of Plaintiff's counsel. (*See*, Dkt. 75-4.) Although Mr. Pittman seems to have a great deal of knowledge based upon experience regarding Ms. Kelly and Mr. Bennett, he appears to lack sufficient knowledge and experience to speak upon the adequacy and qualifications of Ms. Nash, Mr. Guzzo and Ms. Mikac. Generic information regarding the length of time that he has "known" these attorneys without providing more information regarding their qualification and backgrounds does not support the court's awarding of their fees at the levels requested.

Plaintiffs' counsel fails to provide this Court with information concerning fee awards in other similar FCRA litigation cases in the Alexandria market or evidence of the prevailing hourly rates for FCRA related consumer litigation in the Alexandria, Virginia area. See *Signature Flight Support Corp. v. Landow Aviation L.P.,* 730 F. Supp. 2d 513, 526 (E. D. Va. 2010) ("The relevant market for the purposes of determining the prevailing rate is the 'community in which the court where the action is prosecuted sits.'"); *Trimper v. City of Norfolk*, 58 F.3d 68, 76 (4th Cir. 1995), *cert. denied*, 516 U.S. 997, 116 S. Ct. 535, 133 L. Ed. 2d 440 (1995) ("the great weight of the law [] holds that the proper measure of fees is the prevailing market rate in the

relevant market, and not the rate charged by the actual attorney in question") (citing *Daly*, 790 F.2d at 1080-81); *Rum Creek Coal*, 31 F.3d at 175 (finding that evidence of the rate actually charged by the petitioning attorney can be relevant only where the rate has been charged in the past to the same client)).

The Fourth Circuit and this Court have previously stated that the relevant market is the Division in which the case is proceeding, not the entire District treated as a whole, which recognizes the different markets encompassed by the different Divisions within a single District. See *Oliphant v. Charlotte Memorial Hosp. & Medical Center*, 1991 U.S. App. LEXIS 2715 (4th Cir. 1991) (holding that the district court erred for "considering an irrelevant market," because "[i]n determining whether a fee enhancement was necessary to attract competent counsel in this case, the district court should have limited its focus to the Charlotte, North Carolina market," not the entire market encompassed by the United States District Court for the Western District of North Carolina); *Buffington v. Baltimore County*, 913 F.2d 113, 129 (4th Cir. Md. 1990) (noting that the relevant market for a case in the Baltimore Division of the District of Maryland is the Baltimore community); *McAfee v. Boczar*, 2012 U.S. Dist. LEXIS 157796, *18-19 fn. 3 (E.D. Va. Nov. 2, 2012) (holding that, in a case proceeding in the Richmond Division, "[t]he Laffey Matrix [which provides customary hourly rates for attorneys in Washington, D.C.] is largely irrelevant to this action because the relevant market is Richmond, Virginia.") (emphasis added); *Yamaha Motor Corp. v. Jim's Motorcycle*, 381 F. Supp. 2d 499, 505 (E.D. Va. 2005) (in a case in Richmond, holding that "[t]he appropriate hourly rate to be used . . . is the rate for similar services by similarly qualified lawyers in the Richmond, Virginia market.") (emphasis added); *Morse v. Republican Party*, 972 F. Supp. 355, 362-363 (E. D. Va. 1997) ("[T]the hourly fee of an attorney should be based on the market rate for legal services in the community in which the

court sits. In the instant case, plaintiffs' attorneys seek compensation at rates higher than the prevailing market rate in Charlottesville, Virginia."). Rates in Northern Virginia/Washington D.C. and Richmond, like those sought by Plaintiffs' attorneys here, are both irrelevant and can be higher than those in Alexandria for equally qualified and experienced attorneys. See *McAfee*, 2012 U.S. Dist. LEXIS 157796, *18-19 fn. 3 ("Rates in Washington, D.C. are considerably higher than those in Richmond for equally qualified and experienced attorneys."). Similar to *Morse*, here "plaintiffs have failed to rebut the presumption that the hourly fee of an attorney should be derived from the community in which the court sits." *Morse*, 972 F. Supp. at 364 ("Although plaintiffs attempt to secure higher fees on the basis of fees charged by other attorneys in similar cases, none of these attorneys are in the Charlottesville market."). Although there are cases in this district whereby hourly rates similar to or above those requested here are granted, Plaintiff ignores the case law whereby lower fees were awarded in similar circumstances.

Despite the highly deferential standard of review on appeal, in *Grissom* the Fourth Circuit vacated and remanded a fee award. 549 F.3d at 321-322. In that case, the proponent: (1) filed attorney billing records and affidavits of lead counsel and junior members of the firm representing him; (2) pointed to several fee awards by courts in other discrimination cases; and (3) filed a copy of a schedule of prevailing hourly rates for litigation counsel in the Washington, D.C. area, . . .." *Id*. The *Grissom* court reiterated the long-standing requirement of proving the reasonableness of the requested hourly rate and the burden on Plaintiffs to produce specific evidence of prevailing market rates in the Alexandria area for this specific type of work:

> [D]etermination of the hourly rate will generally be the critical inquiry in setting the reasonable fee, and the burden rests with the fee applicant to establish the reasonableness of a requested rate. In addition to the attorney's own affidavits, the fee applicant must produce satisfactory specific evidence of the prevailing market rates in the relevant community for the type of work for which he seeks an award. Although the determination of a market rate in the legal profession is inherently

problematic, as wide variations in skill and reputation render the usual laws of supply and demand largely inapplicable, the Court has nonetheless emphasized that market rate should guide the fee inquiry.

549 F.3d at 321 (emphasis added) (quoting *Plyler*, 902 F.2d at 277 (internal quotation marks and citations omitted in original)) (citing *Blum v. Stenson*, 465 U.S. 886, 895 n.11, 104 S. Ct. 1541, 79 L. Ed. 2d 891 (1984) (fee applicant must "produce satisfactory evidence--in addition to the attorney's own affidavits--that the requested rates" align with prevailing rates)); accord *Lake Wright Hospitality, LLC v. Holiday Hospitality Franchising, Inc.*, 2009 U.S. Dist. LEXIS 122113, *6 (E.D. Va. Oct. 23, 2009); see also *Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 179 (4th Cir. 1994) (holding "the community in which the court sits is the first place to look to in evaluating the prevailing market rate") (citing *National Wildlife Federation v. Hanson*, 859 F.2d 313, 317 (4th Cir. 1988).

Here, counsel failed to submit to this Court any evidence concerning recent fee awards by this Court in similar FCRA litigation in Alexandria or to provide any specific evidence of prevailing hourly rates in Alexandria for consumer litigation involving the FCRA. See *Daggett v. Kimmelman*, 811 F.2d 793, 799 (3d Cir. 1987) ("there . . . comes a point where a lawyer's historic rate, which private clients are willing to pay, cannot be imposed on his or her adversaries."). There can be no dispute that the last few years have seen a significant increase in FCRA and consumer litigation and there is no dearth of attorneys willing to take on this work. This lack of any affidavit regarding the recent prevailing hourly rates in Alexandria is insufficient under Fourth Circuit jurisprudence to justify an award of any fees. See, e.g., *Grissom*, 549 F.3d at 321.

Further, and of great concern to Defendant, Plaintiff has failed to inform this Court of the actual rate agreed to by his counsel for the prosecution of this matter. If Plaintiff was awarded

the fees requested, without notifying this Court of the rate agreed upon between Plaintiff and his counsel, his attorneys would unjustifiably and inequitably receive a windfall by being awarded the highest possible rate allowed by this Court when that amount was not even agreed to by Plaintiff. Therefore, Plaintiff has failed to meet his burden and this Court should decline awarding Plaintiff the fees requested.

### F.  Time Limitations Imposed by the Client or Circumstances

Plaintiff states that this factor provides no basis for an adjustment but Defendant disagrees. Plaintiff chose to sit and wait, over four months to seek the default, instead of pursuing this matter diligently. Further, Plaintiff's refusal to withdraw the default after discussion with counsel for Defendant further supports Defendant's position that Plaintiff unreasonably delayed the pursuit of this matter and his actions caused for attorney's fees to unreasonably and unnecessarily rise in this matter.

### G.  Amount in Controversy and the Results Obtained

Plaintiff's position regarding this factor is incorrect. Courts in this circuit have held that the "degree of success obtained by the plaintiff is the 'most critical factor' in determining the reasonableness of a fee award, [and] the district court 'may simply reduce the award to account for the limited success.'" *Lilienthal,* 322 F. Supp. 2d at 675 (quoting *Hensley,* 461 U.S. at 436). "A reduced fee award is appropriate if the relief, *however significant*, is limited in comparison to the scope of the litigation as a whole." *Hensley*, 461 U.S. at 440 (emphasis added).

Importantly, Defendant prevailed on all of the motions for which Plaintiff now seeks to be paid. Further, Plaintiff was not prejudiced by Defendant's late appearance in this matter. Defendant was forced to file its Motion to Vacate the Default and File a Late Answer because Defendant, although Plaintiff had taken no action for over four months before the filing of his

Active 22547162v1

Motion for Default, refused to withdraw that motion so that the parties could resolve the matter without court intervention and litigate on the merits more efficiently.

## H. Experience, Reputation and Ability of the Attorney

Mr. Pittman's affidavit relied upon by Plaintiff contains generalizations and only contains sufficient specific information about Ms. Kelly and Mr. Bennett. The information provided regarding the other attorneys billing in this matter is insufficient to justify the amount of attorney's fees claimed.

## I. Undesirability of the Case within the Legal Community

Plaintiff's speculation that there are few attorneys capable and willing to take on a simple FCRA matter such as this is not convincing. The consumer law practice area and industry is booming throughout the country. A review of Pacer shows that, form the time this lawsuit was filed until the present, 145 cases have been filed in the consumer litigation field in the Eastern District of Virginia. Plaintiff's argument that they are the only firms who are capable or willing to take on a case such as this to justify their fee request is unavailing and does not support their position.

## J. Awards in Similar Cases

Plaintiff's citations to Fair Debt Collection Practice Act matters from the Seventh Circuit provide no guidance to, nor are they binding upon, this Court. Plaintiff's citation the *Pinpoint It Services* for the premise that similar fees were awarded in that matter does not support its position either. The fact pattern, legal questions and billing entries in this matter are entirely different than those analyzed by the *Pinpoint* court. Plaintiff would have to make the arguments presented in its Motion for Default and accompanying exhibits regardless of Defendant's appearance in this matter.

Active 22547162v1

## <u>CONCLUSION</u>

Defendant tried to avoid unnecessary expense by resolving the issues presented in the motions out of court.  Plaintiff refused to do so, preferring instead a hearing in which he believed there was no downside: either he wins the hearing and a judgment is entered against Defendant, or his attorneys run up unreasonable fees and he has an opportunity to seek a windfall recovery. Plaintiff's choice to pursue this strategy should not be rewarded, just like this Court rejected the arguments based on his choice to wait so long to seek default judgment and to settle with other defendants in the interim.  Having found himself in a third scenario – where the Court has not even decided the threshold question of whether Plaintiff should be awarded fees – Plaintiff does not even attempt to address the question of his entitlement to fees.  But it is Plaintiff who bears the burden to establish both that he is entitled to fees and the reasonableness of the fees he is requesting.  Defendant submits Plaintiff has failed to satisfy either his burden of persuasion or his evidentiary burden.

Therefore, Plaintiff's request for attorney's fees and costs in this matter should be denied in its entirety.  In the event this Court chooses to award Plaintiff fees, Defendant respectfully requests that those fees be drastically reduced to 10% of the amount requested (or $3,636.43).

WHEREFORE, for the reasons set forth herein, Defendant Granite Bay Acceptance, Inc., respectfully requests this Court deny Plaintiff's Motion for Attorney's Fees and Costs, or in the alternative, award a fraction of the attorney's fees and costs sought by Plaintiff, and that it grant Defendant such other and further relief as this Court deems appropriate and just.

Respectfully submitted,

GRANITE BAY ACCEPTANCE, INC.

By: /s/ Ethan G. Ostroff
       Of Counsel

23

Ethan G. Ostroff (VSB No. 71610)
Counsel for Granite Bay Acceptance, Inc.
TROUTMAN SANDERS LLP
222 Central Park Avenue, Suite 2200
Virginia Beach, Virginia 23462
Telephone: (757) 687-7541
Facsimile: (757) 687-7541
E-mail: ethan.ostroff@troutmansanders.com

Joseph Messer (admitted *pro hac vice*)
Counsel for Granite Bay Acceptance, Inc.
Messer, Stilp & Strickler, Ltd.
a Professional Corporation
166 W. Washington, Suite 300
Chicago, IL 60602-2390
Telephone: (312) 334-3440
Facsimile: (312) 334-3434
E-mail: messer@messerstilp.com

Active 22547162v1

## CERTIFICATE OF SERVICE

I hereby certify that on this 7th day of July, 2014, I electronically filed the foregoing document with the Clerk of the Court, using the CM-ECF system, which will send notification of such filing to the following CM-ECF participants:

**Counsel for Plaintiff Douglas Arevalo**
Kristi C. Kelly
Andrew J. Guzzo
Kelly & Crandall PLC
4084 University Drive, Suite 202A
Fairfax, VA 22030
E-mail: kkelly@kellyandcrandall.com
E-mail: aguzzo@kellyandcrandall.com

Leonard A. Bennett
Susan M. Rotkis
Consumer Litigation Associates
763 J Clyde Morris Boulevard, Suite 1A
Newport News, VA 23601
E-mail: lenbennett@clalegal.com
E-mail: srotkis@clalegal.com

/s/ Ethan G. Ostroff
Ethan G. Ostroff (VSB No. 71610)
Counsel for Granite Bay Acceptance, Inc.
TROUTMAN SANDERS LLP
222 Central Park Avenue, Suite 2200
Virginia Beach, Virginia 23462
Telephone: (757) 687-7541
Facsimile: (757) 687-7541
E-mail: ethan.ostroff@troutmansanders.com

Active 22547162v1